IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KIMBERLY R. ARIZMENDEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:13-cv-1065-O-BN |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiff Kimberly R. Arizmendez seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision should be reversed and remanded.

**Background**

Plaintiff alleges that she was disabled due to a variety of ailments, including lupus, arthritis, gout, and anemia. *See* Dkt. No. 14-6 at 7. After her applications for disability and supplemental security income ("SSI") benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). The hearing was held on October 18, 2011. *See* Dkt. No. 14-2 at 37-55. At the time of the hearing, Plaintiff was 45 years old. *See id.* at 41. She has a tenth grade education and has past work experience as cashier, boat upholsterer, janitor, and fast food worker. *See id.* at 48, 52-53. Plaintiff has not engaged in substantial gainful activity since September 28, 2009. *See id.* at 39, 41.

The ALJ found that Plaintiff was not disabled and therefore is not entitled to disability or SSI benefits. *See id.* at 28-33. Although the medical evidence established that Plaintiff suffered from polyarthralgias, a history of anemia, and a history of substance addiction, the ALJ concluded that Plaintiff's impairments were non-severe and did not support a medical diagnosis of lupus. *See id.* at 30 & 32. He explained:

> Objective evidence and subjective factors are not supported by objective medical findings and history of medical treatment. Dr. Porter, a rheumatologist, reported on April 2011, "at this time [Plaintiff] did not meet criteria for Systemic Lupus Erythematosus (SLE)." (Ex 7F/3). Her anemia improved. (Ex 8F/2). The undersigned finds the claimant was not entirely credible when she testified and claimed sobriety from cocaine since 2004. However, she acknowledged to her treating source she relapsed June 16, 2009, and used cocaine the night before, as well as this morning. (Ex 1F/30) The claimant has a limited work history, which raises questions of her motivation to work. She complained of an episode of severe anemia twice due to uterine fibroids; however, she did not want to have it taken care of. (Ex 2F/3)
>
> The undersigned rejects Dr. Nichols' diagnosis of Lupus. (Ex 9F) There was no reference to objective medical findings or narrative treatment notes. It was based on claimant's subjective complaints not consistent with record as a whole. A specialist did not diagnose SLE. (Ex 7F/3)

*Id.* at 32.

Plaintiff appealed that decision to the Appeals Council, which denied her request for review. *See id.* at 5-8. Plaintiff then filed this action in federal district court. *See* Dkt. No. 1. Plaintiff challenges the hearing decision on four general grounds: (1) the ALJ erred in finding that Plaintiff's combined impairments were non-severe; (2) the ALJ improperly rejected her treating physician's opinion that she could not perform full-time work and would be absent from work more than four times a month; (3) the

2

ALJ ignored other evidence supportive of disability; and (4) the ALJ's finding that Plaintiff's subjective complaints were not credible is not legally sufficient.

The undersigned concludes that the hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with these findings, conclusions, and recommendation.

**Legal Standards**

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical

3

or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant

from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity."). The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows where the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's

substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

### Analysis

Among the arguments that Plaintiff makes is a single ground that compels remand: the ALJ improperly rejected Plaintiff's treating physician's opinion, which resulted in reversible legal error.

In his decision, the ALJ cited five factors to support his conclusion that Plaintiff "does not have an impairment or combination of impairments that significantly limits her ability to perform basic work activities": (1) Dr. Porter's April 2011 determination that Plaintiff did not meet criteria for Systemic Lupus Erythematosus ("SLE"); (2) the improvement in Plaintiff's anemia; (3) Plaintiff's evasive testimony about past cocaine use; (4) Plaintiff's limited work history; and (5) Plaintiff's statement that she did not want to have her severe anemia "taken care of." Dkt. No. 14-2 at 32. The ALJ did not directly address Plaintiff's credibility as to her claims of severe impairment. In rejecting Plaintiff's treating physician Dr. J. Dan Nichols's diagnosis of lupus, the ALJ explained that "there was no reference to objective medical findings or narrative treatment notes. It was based on claimant's subjective complaints not consistent with [the] record as a whole. A specialist did not diagnose SLE." *Id.*

6

"The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). "A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Id.* (internal quotations omitted). "The opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Id.* (internal quotations omitted). But the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion" when good cause is shown. *Id.* at 455-56 (internal quotations omitted). An ALJ may show good cause "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

Social Security Administration ("SSA") Regulations provide that the SSA "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion" and list factors that an ALJ must consider to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to "controlling weight." 20 C.F.R. § 404.1527(c)(2). Specifically, this regulation requires consideration of:

(1)  the physician's length of treatment of the claimant;

(2)  the physician's frequency of examination;

(3)  the nature and extent of the treatment relationship;

> (4)  the support of the physician's opinion afforded by the medical evidence of record;
>
> (5)  the consistency of the opinion with the record as a whole; and
>
> (6)  the specialization of the treating physician.

*See* 20 C.F.R. § 404.1527(c). In *Newton*, the Fifth Circuit concluded that "an ALJ is required to consider each of the § 404.1527[(c)] factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456. However, in decisions construing *Newton*, the Fifth Circuit has explained that "[t]he *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Therefore, where there are competing opinions of examining physicians, the ALJ need not necessarily set forth his analysis of the Section 404.1527(c) factors when declining to give controlling weight to a treating physician. *See id*. at 466-67.

Plaintiff argues that the ALJ erred by rejecting the diagnosis of Dr. Nichols, Plaintiff's treating physician, without articulating his reasons for finding Plaintiff's impairments non-severe, considering the limitations described by Dr. Nichols, or observing that Dr. Porter, the treating rheumatologist, provided a similar and non-contradictory diagnosis supported by medical evidence. She further faults the ALJ for ignoring a statement by Social Security personnel that Plaintiff was, indeed, limited by her impairments and for neglecting to make any findings as to Plaintiff's overall credibility.

The undersigned concludes that the ALJ erred in failing to fully apply the *Newton* factors before rejecting Dr. Nichols's diagnosis and finding Plaintiff's impairment to be "not severe." The ALJ's decision includes no discussion of any physician's length of treatment or frequency of examination or of the nature and extent of Dr. Nichols's treatment relationship with Plaintiff. The decision includes little discussion of the medical evidence record as a whole and no analysis of the support afforded to Dr. Nichols's opinion by the medical evidence of record, the consistency of Dr. Nichols's opinion with the record as a whole, or the specialization of Dr. Nichols as Plaintiff's treating physician. There is also no discussion of Dr. Nichols's findings as to the severity of the impairment. Instead, the ALJ rejected Dr. Nichols diagnosis of lupus because "there was no reference to objective medical findings or narrative treatment notes," "it was based on claimant's subjective complaints," and "a specialist did not diagnose SLE." *See* Dkt. No. 14-2 at 32.

But these findings are at odds with the actual medical records before the ALJ. Those records include a diagnosis of polyarthraligia and anemia, accompanied by swelling of knees and ankles, in October 2010. *See* Dkt. No. 14-8 at 29. On December 8, 2010, Plaintiff, then walking with a cane due to her impairments, began receiving medical treatment from Dr. Nichols. *See id.* at 36. She was prescribed Prednisone and, upon follow-up testing, tested positive for ANA (antinuclear antibodies), which resulted in a diagnosis of lupus on February 9, 2011. *See id.* at 42, 49. She was then referred for further treatment to a rheumatologist, Dr. Roger W. Porter. On April 26, 2011, he, too, diagnosed polyarthralgias. *See id.* at 57. He ordered another ANA test and reported

9

positive results. *See id.* However, because he did not find frank synovitis (joint inflammation) during his exam, Dr. Porter found that she "did not meet the criteria for SLE." *Id.* Although he did not diagnose Plaintiff with lupus, Dr. Porter found, based on her positive ANA test and arthralgias, that Plaintiff suffered from inflammatory polyarthropathy and should be treated as if diagnosed with SLE. *See id.* Dr. Porter did not find, as suggested by the ALJ's decision, that Plaintiff's impairment or combined impairments were non-severe.

Upon re-examination on September 13, 2011, Dr. Nichols again diagnosed Plaintiff with lupus, observing that the diagnosis was based upon "labs, response to meds, consultations." *Id.* at 63. Dr. Nichols further observed Plaintiff's physical limitations of joint pain and general weakness, that her daily functioning is significantly impaired, that she is likely to be absent from work more than four days per month and would not be able to maintain and complete a 40 hour work week on a sustained basis, and that Plaintiff has suffered or can be expected to suffer from these limitations for 12 continuous months. *See id.* On January 12, 2012, Dr. Porter again confirmed that his "diagnosis remains ANA positivity, pericarditis, arthralgias that we[']re basically treating as if she had mild lupus." Dkt. No. 14-2 at 24.

The ALJ did not address these results. Instead, he stated that Plaintiff's evidence of lupus was entirely based upon her subjective complaints and not supported by medical findings or medical treatment notes. *See* Dkt. No. 14-2 at 32. This statement is belied by the record before the ALJ. And, insofar as the ALJ appears to have rejected Dr. Nichols's diagnosis as "inconsistent" with that of Dr. Porter, the

medical records suggest otherwise. Dr. Porter's findings, as a specialist, twice confirm ANA positivity and polyarthralgias and twice state that Plaintiff should be treated as if she has mild lupus, despite the lack of synovitis required under the criteria for lupus. While some of the notes regarding synovitis may seem to support a finding that Plaintiff did not have lupus, insofar as Plaintiff did not meet the criteria for SLE, Dr. Porter's findings do not appear to directly contradict the findings of Dr. Nichols. *See Scott v. Heckler*, 770 F.2d 482, 485-86 (5th Cir. 1985) (holding that "ordinarily the opinions, diagnoses and medical evidence of a treating physician who is familiar with the claimant's injuries, treatment, and responses should be accorded considerable weight in determining disability"). Dr. Nichols's medical opinion was based on examination and treatment of Plaintiff over a period of time and three positive ANA tests and was supported by his notes from her multiple in-person visits.

To summarize, neither the ALJ nor Defendant has pointed this Court to any evidence that directly contradicts Dr. Nichols's findings; the rationale provided for rejecting his diagnosis – that "there was no reference to objective medical findings or narrative treatment notes" – is not supported by the evidence; and Dr. Porter's findings and medical reports finding that Plaintiff "did not meet the criteria for SLE" due to the lack of synovitis do not appear to be entirely inconsistent with Dr. Nichols's conclusions. As such, the ALJ was required to analyze the six factors laid out in 20 C.F.R. § 404.1527(c) before rejecting Dr. Nichols's opinion, which the ALJ failed to do. This constituted legal error.

The ALJ's decision must stand or fall with the reasons set forth in that decision, as adopted by the Appeals Council. *See Newton*, 209 F.3d at 455. Further, the Court cannot reweigh the evidence and is unable to say what the ALJ would have decided had he properly analyzed Dr. Nichols's opinion, and, if necessary, afforded it greater weight. Had the ALJ given different consideration to Dr. Nichols's records and assessment of Plaintiff's ability to engage in work-related activities, the ALJ might have reached a different decision as to disability. This is especially true in light of the fact that the burden lies with the Commissioner at Step 5 to identify gainful employment available in the national economy that the claimant is capable of performing. *See Greenspan*, 38 F.3d at 236; *see also Myers v. Apfel*, 238 F.3d 617, 621-22 (5th Cir. 2001) (holding that remand was required when the ALJ failed to consider all evidence from a treating source and failed to present good cause for rejecting it); *Newton*, 238 F.3d at 621-22 (holding that remand was required when the ALJ failed to consider each of the Section 404.1527 factors before declining to give weight to the opinions of the claimant's treating specialist); *Harris v. Astrue*, No. 3:11-cv-1089-M-BH, 2012 WL 4442303, at *15 (N.D. Tex. Sept. 7, 2012), *rec. adopted*, 2012 WL 4458405 (N.D. Tex. Sept. 26, 2012).

Because it was error to reject Dr. Nichols's opinion without analyzing the six factors laid out in 20 C.F.R. § 404.1527(c), the undersigned concludes that the Court need not further consider the remaining arguments raised by Plaintiff. The ALJ's failure to consider the Section 404.1527 factors in connection with Dr. Nichols's opinion was prejudicial error, and this matter should be reversed and remanded.

**Recommendation**

The hearing decision should be reversed, and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 27, 2014

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE